CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED
FEB 20 2009
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| RICKY O. MOON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 6:08cv40016 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Ricky O. Moon ("Moon") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for supplemental security income benefits under the Social Security Act (the "Act"). On appeal, Moon contends that the Administrative Law Judge ("ALJ") erred in finding that Moon did not meet the requirements of Listing 12.05C. Having reviewed the record, the undersigned finds the ALJ's decision is supported by substantial evidence and thus recommends that the Commissioner's decision be affirmed.

I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they

are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5)

whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

Moon was born in 1959, (Administrative Record, hereinafter "R." 125), and completed the ninth grade. (R. 345.) His past relevant work includes jobs as a pipe layer, logger, and fence installer. (R. 99, 118, 152, 352-53.)

Moon filed an application for social security income benefits ("SSI") on July 14, 2004, claiming an onset date of January 3, 2004 due to low back pain. (R. 107, 117-18, 125.) Moon's application for benefits was rejected by the Commissioner initially and again upon reconsideration. An administrative hearing was convened before an ALJ, and

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 416.929(a).

on November 4, 2006, the ALJ issued a decision finding Moon has the residual functional capacity to perform light work and can perform jobs that exist in significant numbers in the national economy; thus, he is not disabled under the Act. (R. 231-37.) By Order dated April 26, 2007, the Appeals Council vacated the ALJ's decision and remanded the matter for further administrative proceedings based on evidence submitted with Moon's request for review suggesting Moon suffers from a severe mental impairment. (R. 245-46.) A de novo hearing was held before an ALJ on September 25, 2007. (R. 319-82.) On November 7, 2007, the ALJ issued a new opinion, finding Moon suffers from the severe impairment of borderline intellectual functioning. (R. 16-29.) However, the ALJ held that this impairment does not rise to listing-level severity and Moon retains the residual functional capacity to perform simple, routine and repetitive work at all exertional levels. (R. 22-28.) Finding Moon can perform his past relevant work as a logger, construction worker/pipe layer, and fence installer, the ALJ held that Moon is not disabled under the Act. (R. 28-29.) The Appeals Council denied Moon's request for review and this appeal followed. (R. 7-10.)

### III

Moon raises one issue on appeal, whether the Commissioner erred as a matter of law in finding that Moon did not meet the requirements of Listing 12.05C. This listing provides as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

4

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1. Moon argues that he has met the two requirements of Listing 12.05C by showing he has a valid verbal, performance, or full scale IQ of 60 through 70 and a physical impairment imposing an additional and significant work-related limitation of function. The Commissioner contends Moon must also prove that he has deficits in adaptive functioning as set forth in the introductory paragraph, in order to satisfy the Listing requirements. As Moon can show neither deficits in adaptive functioning nor a physical or mental impairment imposing significant work-related limitation of function, the Commissioner claims he does not meet or equal the criteria of Listing 12.05C.

For the reasons outlined below, the undersigned finds that substantial evidence supports the ALJ's determination that Moon has not met the requirements of Listing 12.05C.

### A. Valid verbal, performance or full-scale IQ.

To meet the criteria of Listing 12.05C, Moon must show he has a valid verbal, performance or full scale IQ of 60 to 70, and there is no dispute that Moon meets this requirement. On December 18, 2006, a Wechsler Adult Intelligence Scale – Third Edition (WAIS-III) test administered by licensed clinical psychologist Blanche Williams, Ph.D., revealed that Moon has IQs in the deficient range, with a verbal IQ of 69, a performance IQ of 62 and a full scale IQ of 63. (R. 300-01.) There is no evidence of a

5

change in Moon's intelligence functioning, thus it must be assumed that his IQ has remained relatively constant over time. Luckey v. U.S. Dep't Health & Human Servs., 890 F.2d 666, 668 (4th Cir. 1989) (citing Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir. 1985)). Marvin A. Gardner ("Gardner"), licensed clinical psychologist, testified at the administrative hearing that Moon's grades provided in the record (see R. 290-94) "are certainly congruent with a 60 to 70 IQ range being mostly, mostly F's and D's and anything much higher than that was usually obtained in some area such as physical education or art where perhaps intelligence level would not be as relevant." (R. 367.) The record also contains a Kuhlman-Anderson score of 82 from 1967. (R. 292.) In comparing that score to a standardized test such as the WAIS-III, Gardner concluded that "the claimant's IQ would measure at the time by one of these more standardized measures . . . somewhere between 72 and 67." (R. 368.) Thus, there is evidence that Moon's IQ was in the 60-70 range before age 22.

**B. Physical or other mental impairment imposing an additional and significant work-related limitation of function.**

The second prong of Listing 12.05C requires Moon to prove he has a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the administrative hearing, the medical expert, Dr. Gardner, testified that Moon had no "additional psychological mental impairment in addition to the 60 to 70 IQ range." (R. 368.) Nor is there evidence in the record of an additional mental impairment. Thus, the question is whether Moon has a physical impairment imposing a significant work-related limitation of function.[2]

---

[2] The medical expert, Dr. Gardner, a licensed clinical psychologist, declined to opine as to whether Moon suffers from a physical impairment imposing a significant work-related limitation of function for purposes

In his first decision issued November 4, 2006, the ALJ found that Moon had the RFC to perform light work, and thus was unable to perform his past relevant work as a logger, pipe layer and fence installer. (R. 234-35.) The Fourth Circuit has held that this finding alone establishes the significant work-related limitation of function requirement of section 12.05C. See Branham v. Heckler, 775 F.2d 1271, 1273 (4th Cir. 1985) ("Obviously, if plaintiff cannot perform his past relevant work as a laborer, he experiences a significant work-related limitation of function."); accord Flowers v. U.S. Dep't Health & Human Servs., 904 F.2d 211, 214 (4th Cir. 1990) ("In this circuit, we follow the rule that if a claimant cannot return to his past relevant work, he has established a work-related limitation of function which meets the requirements of § 12.05(C)."); Luckey v. U.S. Dep't Health & Human Servs., 890 F.2d 666, 669 (4th Cir. 1989) ("Luckey's inability to perform his prior relevant work alone established the significant work-related limitation of function requirement of section 12.05(C)."). However, the ALJ's first opinion was vacated by the Appeals Council, and Moon's case was remanded to the ALJ for further proceedings based on new evidence of a mental impairment. (R. 245.)

In his second opinion, which is now before the court for review, the ALJ found that Moon has the RFC to perform simple, routine and repetitive tasks at all exertional levels and therefore can perform his past relevant work. (R. 27-28.) The ALJ declined to follow the opinion of the state agency physicians that Moon was limited to carrying twenty pounds occasionally, ten pounds frequently, and standing/walking/sitting six hours in an eight hour workday (R. 196-201), because "[n]o treating or examining

---

of Listing 12.05C, as he does not have the requisite training and licensing with which to make such a finding. (R. 368.)

medical source has opined that the claimant is mentally or physically more limited" than the RFC assigned to Moon by the ALJ. (R. 27.)

While the regulations do not define "significant limitation," the Fourth Circuit has held that an impairment need not be disabling in and of itself for purposes of meeting Listing 12.05C. Branham, 775 F.2d at 1273. "An illness or injury imposes a significant limitation when its effect on the claimant's ability to work is more than slight or normal." Pullen v. Bowen, 820 F.2d 105, 109 (4th Cir. 1987) (citing Cook v. Bowen, 797 F.2d 687, 690 (8th Cir. 1986) and Nieves v. Sec'y of HHS, 775 F.2d 12, 14 (1st Cir. 1985)), abrogation on other grounds recognized by Lively v. Brown, 858 F.2d 177, 180 n.1 (4th Cir. 1988).

The second element of Listing 12.05C closely parallels a finding of a severe impairment under 20 C.F.R. § 404.1520(c). See Nieves, 775 F.2d at 14. The second prong of Listing 12.05C requires "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1. A severe impairment is defined in § 404.1520(c) as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." In his second opinion, the ALJ found that Moon suffers from one severe impairment, borderline intellectual functioning (R. 18), but declined to find Moon's low back pain qualified as a severe impairment.[3] (R. 21.)

Moon was diagnosed with a lumbar sprain by William Albers, M.D., on January 30, 2004, after he allegedly was hit by a car driven by his ex-girlfriend. (R. 195, 335-36.) Dr. Albers recommended anti-inflammatories and physical therapy and held Moon out of

---

[3] In his first opinion, however, the ALJ found that Moon had a combination of severe impairments, chronic low back pain/strain and obesity. (R. 233.)

work for two weeks. (R. 194.) Based on Moon's reports of continued pain and little improvement with physical therapy, Dr. Albers continued to hold Moon out of work. (R. 194.) Therapy notes, however, reflect that Moon made steady progress with a core strength program and that his stability was improving with each visit. (R. 164, 167.) Moon's pain was attributed to muscle soreness in the area of the gluts and lumbar spine. (R. 164.) Dr. Albers recommended a CT scan and bone scan, both of which proved to be normal for Moon's age. (R. 187-88, 194.) Nevertheless, Moon reported no improvement in his pain and elected to continue physical therapy while Dr. Albers held him out of work for an additional two weeks. (R. 194.) On March 31, 2004, in response to Moon's inquiry about returning to work despite his lack of improvement, Dr. Albers noted, "I know of no reason that would damage him. Certainly it is up to him if he wants to do [sic]. He has no abnormal bone scan. Nothing more than a diffusely bulging disc at 4, 5 on his CT scan." (R. 194.)

Moon returned to work for three weeks. On May 18, 2004, he told Preston Edwards, M.D., that "if he is moving about he does a little bit better than if he has to stand for long periods," but quit working because "he just can't stand the pain." (R. 178.) Moon also reported to Dr. Edwards that his MRI showed two bulging discs. (R. 178.) Dr. Edwards prescribed a thirty day supply of Lortab and wrote Moon out of work for the week. (R. 178.) In a letter to Dr. Edwards on May 20, 2004, Dr. Albers corrected Moon's representations regarding his MRI results, noting Moon's MRI showed one slightly bulging disc which did not appear to be pushing on any nerves and stating, "there did not seem to be anything pathological that might explain his discomfort." (R. 180.)

At Dr. Albers' persistent recommendation, Moon sought a second opinion from Paul Fitzgerald, M.D., at Piedmont Orthopaedic Surgery. (R. 181-82.) In a letter to Dr. Fitzgerald, Dr. Albers described Moon's bulging disc as "not tremendously impressive" and noted it did not appear to cause stenosis or impinge on the nerves. (R. 183.) Dr. Fitzgerald noted marked obesity with poor abdominal musculature and recommended an MRI and that Moon commence a "strict weight reduction program, swimming program, and a stretching program for his back, particularly for his hamstrings. He needs to be encouraged in a walking program." (R. 181.) Dr. Fitzgerald further stated, "[h]opefully, he can resume [work] on a light duty basis shortly as far as we are concerned, although I realize he works for English Construction Company and heavy duty activities may be required." (R. 182.)

Although Dr. Albers did not feel an MRI would show anything "revolutionary" compared to the CT scan, he ordered one for completeness, "since the patient is having so much trouble." (R. 193.) The MRI revealed no disc herniation or spinal stenosis. (R. 186.) Dr. Albers noted the tests and second opinions have "not really been very helpful" as Moon continued to complain of pain. (R. 192.) Moon was referred to Murray Joiner, M.D., who recommended no further pharmacologic intervention and noted Moon should continue with his chiropractor. (R. 204.) Moon visited a chiropractor in December, 2004, (R. 205-09), and did not seek treatment again until June, 2005, when he complained to Dr. Slusher of continued lower back pain. (R. 217-18, 220-21.) He returned for a check-up five months later (R. 220-21), and then in December, 2005, Moon presented to Rebecca Young, M.D., with complaints of neck pain. (R. 227.) X-rays of the cervical spine showed minimal scoliosis but were otherwise normal. (R. 224-25.) In

a follow-up visit in January, 2006, Moon reported his neck pain was improving and examination revealed no tenderness over the lumbosacral spine. (R. 226.) In March, 2006, he presented to Robert Elliott, M.D., with complaints of back pain which caused a "different type of discomfort." (R. 222.) He was diagnosed with right flank pain and instructed to follow up with Dr. Albers, his orthopedist. (R. 222.) In June, he returned for a physical, which he needed for his Commercial Drivers License application, and the exam was unremarkable. (R. 306.) In September, 2006, he reported experiencing neck pain to Dr. Elliott, and stated he had no lower back pain. (R. 305.) He did not seek treatment again until March, 2007, at which time he presented for a general check up, which proved to be a normal examination. (R. 304.) Moon returned in May for a follow-up visit and reported he was "doing better without major complaints or problems," with no mention of low back pain. (R. 303.)

Based on this record, the undersigned concludes that substantial evidence supports the ALJ's finding that Moon has the residual functional capacity to perform simple, routine and repetitive work at all exertional levels, and that Moon does not suffer from a physical impairment that imposes a significant work-related limitation of function. No examining or treating physician has opined that Moon is limited in his ability to work. In fact, Moon's treating physician, Dr. Albers, noted he saw no reason for Moon not return to work at English Construction. (R. 194.) There is simply no objective evidence in the record to support Moon's complaints of lower back pain. In fact, Dr. Albers specifically stated that there did not appear to be anything pathological that might explain Moon's discomfort. (R. 180.) Moon's complaints of pain alone are not enough to establish a physical impairment imposing a significant work-related limitation of

11

function. "Pain is not disabling per se, and subjective evidence of pain cannot take precedence over the objective medical evidence or lack thereof." Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996) (quoting Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)).

It is unclear why the ALJ initially limited Moon to light work in his first opinion (R. 234) when he found Moon capable of performing work at all exertional levels in his second opinion (R. 27-28), and the medical evidence before him regarding Moon's physical condition remained substantially the same.[4] However, the court is charged with reviewing the ALJ's second opinion dated November 7, 2007, and finds with respect to the second prong of Listing 12.05C that the ALJ's opinion is supported by substantial evidence. Regardless, even if the court found that the ALJ erred in his RFC determination and/or his finding that Moon does not have a physical impairment imposing a significant work-related limitation of function, Moon still would not meet the criteria of Listing 12.05C.

### C. Significant deficits in adaptive functioning.

The introduction to section 12.00 Mental Disorders, 20 C.F.R. Pt. 404, Subpt. P, App. 1, states as to Listing 12.05:

> Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria, we will find that your impairment meets the listing.

---

[4] In his second opinion, the ALJ states his RFC finding is supported by the benign objective findings in evidence and the limited degree and conservative nature of the treatment that the claimant received. (R. 28.) Besides school records and the psychological evaluation by Blanche Williams, Ph.D., the only new evidence before the ALJ on remand included CVS pharmacy records and records from office visits to Dr. Elliott on 6/1/06, 9/28/06, 3/15/07 and 5/15/07.

12

20 C.F.R. Pt. 404, Subpt. P, App. 1 (emphasis added). Moon claims he does not have to prove significant deficits in adaptive functioning, as set forth in the introductory paragraph to Listing 12.05, in addition to the two criteria set out in section 12.05C. Following oral arguments in this matter, Moon cited two cases that he claims support his argument that a showing of deficits in adaptive functioning is not required. The undersigned has reviewed these cases and finds they provide little, if any, weight to Moon's argument.

The first case to which Moon cites, Mendez v. Barnhart, 439 F.3d 360 (7th Cir. 2006), specifically states that "the regulations do require the administrative law judge to determine that the claimant's mental 'deficits' were manifested before the age of 22," pursuant to the introductory paragraph to Listing 12.05. Moreover, the court in both Maresh v. Barnhart, 431 F.3d 1073, 1075 (8th Cir. 2005), and the opinion that supercedes it, 438 F.3d 897, 899 (8th Cir. 2006), found that the requirements in the introductory paragraph to Listing 12.05 are mandatory. The Eight Circuit held that three requirements must be met for the Listing: 1) a valid verbal, performance or full scale IQ of 60 through 70; 2) onset of the impairment before age 22; and 3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. Maresh, 438 F.3d at 899; see also 431 F.3d at 1075. The court went on to find that Maresh exhibited deficits in adaptive functioning at a young age. Maresh, 438 F.3d at 900; see also 431 F.3d at 1075.

Moreover, the Fourth Circuit has held that the requirements outlined in the introductory paragraph of Listing 12.05 are mandatory. Luckey v. U.S. Department of Health & Human Services, 890 F.2d 666, 668 (4th Cir. 1989) ("In dispute are the issues

13

of whether Luckey's low IQ manifested itself in deficits in his adaptive behavior before age 22 and whether he has a physical or mental impairment imposing additional and significant work-related limitation of function."); accord Norris v. Astrue, No. 7:07cv184, 2008 WL 4911794, at *2-3 (E.D.N.C. Nov. 14, 2008) (holding the diagnostic description of § 12.05 requires a showing of both low IQ and adaptive functioning deficits); Hatfield v. Astrue, No. 5:07cv267, 2008 WL 4449948, at *6 (S.D.W.Va. Sept. 29, 2008) ("[O]ne of the essential features of mental retardation is significant deficits in adaptive functioning."); Thomas v. Astrue, No. 1:07cv22, 2008 WL 2169015, at *14 (W.D.Va. May 23, 2008) ("[A]longside the two requirements in 12.05C, the introductory paragraph of section 12.05 creates an additional element required to meet the listing for mental retardation....").

According to the plain language of section 12.00 governing mental disorders, Moon must prove that he has deficits in adaptive functioning initially manifested during the developmental period before moving on to the requirements of Listing 12.05C.[5] See also Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition) 42 [hereinafter DSM-IV] ("Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning.").

---

[5] The medical expert at the administrative hearing, Dr. Gardner, stated:

> If IQ measures are within that range and if those IQ measures remain in that range as an adult, my experience would tell me that that's usually sufficient to make a, to opine that the claimant is eligible for the listings in 12.05 unless there is evidence given either by testimony or through some other written means, some on the record, that in point of fact the adaptive functioning is higher than that.

(R. 370.) To the extent Dr. Gardner finds that a showing of significant deficits in adaptive functioning is unnecessary under the regulations, the undersigned declines to follow such opinion, as it is contrary to Fourth Circuit precedent and the plain language of the Listing.

14

"Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM-IV 42. Moon claims IQ scores below 70 and grades of F and D in academic subjects are manifestations of significant deficits in adaptive functioning. Pl.'s Br. 5. However, Listing 12.05C requires more than a certain IQ score for finding of disability; evidence of an additional impairment imposing a significant limitation and deficits in adaptive functioning must be shown. Grades and IQ scores, without more, do not prove how effectively individuals cope with common life demands and how well they meet the expected standards of personal independence. See DSM-IV 42.

Substantial evidence supports the ALJ's finding that the record does not reflect significant deficits in Moon's adaptive functioning manifested before age 22. The record indicates that Moon has no problem with his personal care (R. 110, 140) and does not need reminders to take his medication, take care of his personal needs and groom. (R. 111.) He performs daily chores including dishes, laundry, and minor household repairs, and he mows the lawn once per week. (R. 111.) On his disability application, he indicated he is able to drive, goes out alone, and shops for what he needs. (R. 112.) He also pays bills, counts change, handles the savings account and uses a checkbook. (R. 112.) Moon regularly attends church and spends time with others. (R. 113.) Although Moon indicated he does not follow written instructions well because his reading ability is limited, he can follow spoken instructions. (R. 114.) At the administrative hearing, Moon was able to comprehend and answer questions asked of him. (R. 319-82.) Moon

testified that he cannot read a letter or a newspaper (R. 332) but stated on his disability application that he can read and understand English. (R. 117.)

Moreover, Moon testified that he quit school in the tenth grade, not because of his inability to perform academically, but "[b]ecause I wanted to play football but my education wouldn't let me play. So I just quit school and went to work." (R. 345.) At the age of eighteen, Moon left home to start a life of his own and moved in with a friend. (R. 346.) For twenty-five years he was a self-employed timber cutter and solicited customers of his own. (R. 333, 349-50.) He testified that he kept track of his business receipts and paid the people working for him a percentage of what he made on a job. (R. 349-50.) Moon's wife testified that she did not get involved with the business and that Moon handled it himself. (R. 364.) He stated he can count change and perform simple math. (R. 354-55.) After a custody battle with an ex-girlfriend, Moon was awarded custody of his two youngest children. (R. 358-60.)

It is clear from the record that Moon is well-equipped to cope with common life demands and is able to function independently, aside from his limited ability to read and write. He is able to maintain personal relationships and care for his family. Substantial evidence supports the ALJ's finding that Moon has not proven significant deficits in adaptive functioning manifested in his youth, and thus does not meet the requirements of Listing 12.05C. Therefore, the undersigned recommends that the Commissioner's decision be affirmed.

## IV

At the end of the day, it is not the province of the reviewing court to make a disability determination. It is the court's role to determine whether the Commissioner's

16
Case 6:08-cv-40016-NKM-mfu Document 16  Filed 02/20/09  Page 16 of 18  Pageid#: 61

decision is supported by substantial evidence and, in this case, substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, the court does not suggest that Moon is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Moon's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, the undersigned recommends that the Commissioner's decision be affirmed and the defendant's motion for summary judgment be granted.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

ENTER: This 20th day of February, 2009.

                                               /s/ Michael F. Urbanski
                                       Hon. Michael F. Urbanski
                                       United States Magistrate Judge